UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JENNIFER HUDAK, | ) |
| Plaintiff | ) |
| v. | ) Cause No. 3:18-CV-932 RLM |
| ST. JOSEPH COUNTY BOARD OF COMMISSIONERS, et al. | ) |
| Defendants | ) |

OPINION AND ORDER

Jennifer Hudak sued the St. Joseph County Board of Commissioners and Arielle Brandy, alleging that they violated the Family and Medical Leave Act. A jury returned a verdict in Ms. Hudak's favor and awarded her $3,000 in back pay. [Doc. No. 60]. The court deferred entry of judgment pending Ms. Hudak's motion for liquidated damages and front pay. [Doc. No. 59]. The court held an evidentiary hearing regarding liquidated damages and front pay on October 20, and the defendants renewed their motion for a directed verdict. For reasons set forth in this opinion, the court DENIES the defendants' renewed motion for judgment as a matter of law, GRANTS Ms. Hudak's motion for liquidated damages in the amount of $3,000 plus interest, and GRANTS Ms. Hudak's motion for front pay in the amount of $7,086.

I. **BACKGROUND**

Ms. Hudak took a job as deputy at the St. Joseph County Board of Elections in January 2018. Ms. Hudak was diagnosed in 2011 with primary biliary cirrhosis, a condition that causes chronic fatigue and is exacerbated by long workdays. An election board grows busier as elections approach. In August 2018 other board members told her there would be ten- to fourteen-hour workdays as the November election approached. Medically unable to work that long a day, Ms. Hudak submitted paperwork in October 2018 for limited hours under the FMLA and supported it with a doctor's statement that she should work no more than eight hours a day. Her FMLA request was approved, though her ensuing schedule referred to a "minimum" of eight hours a day. Some evidence at trial indicates that Ms. Hudak was told that she could vary her starting and/or quitting times to accommodate events she needed to attend, but Ms. Hudak adamantly denied having been told that; she said her supervisor and the county human resources director both told her she had to "follow the schedule." Arielle Brandy (Ms. Hudak's supervisor and a defendant in this case) told her that failure to work when needed would result in a "performance review," which Ms. Hudak took to mean termination. With prescriptions that cost $500 monthly, Ms. Hudak feared losing her job and her county-provided insurance.

2

Things took a negative turn in October 2018 when Ms. Brandy told Ms. Hudak she had to work at a training session on the evening of October 25. Ms. Hudak's workday started at 8:00 a.m. that day, so she would have to work beyond her eight-hour workday to attend the meeting. Ms. Hudak testified at trial that Ms. Brandy and a human resources officer threatened to fire her if she didn't attend. Ms. Hudak didn't attend the meeting and resigned in the early morning hours of October 26, 2018. She started working for the South Bend School Corporation as a bus driver on the morning of October 26. She later sued Ms. Brandy and the County Board of Elections, alleging that they interfered with her FMLA rights by demanding that she work the evening meeting on October 25. Ms. Hudak asked for $13,000 in backpay and a jury returned a verdict for her, awarding her $3,000.

## II. Discussion

### A. Defendants' motion for judgment as a matter of law

The defendants renewed their Rule 50 motion for judgment as a matter of law at the evidentiary post-trial hearing, arguing that the evidence was insufficient for a reasonably jury to find that the defendants had violated the FMLA. A party is entitled to judgment as a matter of law on an issue if "a

reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). If the court doesn't grant a motion for judgment as a matter of law before submitting the issue to a jury, the moving party may renew the motion no later than 28 days after entry of judgment. Fed. R. Civ. P. 50(c).

The defendants' renewed motion wasn't time-barred since the court had deferred entry of judgment. See Fed. R. Civ. P. 50(c). The defendants argued that although Ms. Hudak perceived that her FMLA rights were being violated, the defendants' actions couldn't possibly amount to constructive discharge when the defendants' actions were "isolated" and "inadvertent."

Although the jury received an instruction on constructive discharge, it also received an instruction on interference under the FMLA. [Doc. No. 63]. There was ample evidence at trial that Ms. Brandy discouraged Ms. Hudak from taking FMLA leave, and an employer who discourages an employee from using FMLA leave may be liable for interference. Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 818 (7th Cir. 2015). The jury had sufficient evidence for its verdict, regardless of whether the defendants' conduct arose to constructive discharge. Accordingly, the court denies the defendants' renewed Rule 50 motion for judgment as a matter of law.

4

**B. Ms. Hudak's motion for liquidated damages.**

An employer found liable under the FMLA is also liable for liquidated damages equal to the amount of the damages awarded at trial and interest, unless the employer shows that the violation was done in good faith and that the employer had reasonable grounds for believing the action was lawful. 29 U.S.C. § 2617(a)(1)(A)(iii). The defendants are liable to Ms. Hudak for the jury award of $3,000 and interest on that amount. See id. § 2617(a)(1)(A)(i)-(ii). Ms. Hudak moves for liquidated damages.

The defendants claim entitlement to a good faith defense. They claim their violation was in good faith because the only time anyone with the Board of Elections objected to Ms. Hudak's use of her FMLA rights was on October 25. They also claim a good faith defense because Ms. Hudak knew that the FMLA protected her against retaliation if she didn't attend the night meeting. Lastly, the defendants claim that Ms. Brandy's request for Ms. Hudak to work late didn't rise to the level of intentional interference because it was an "isolated" and "inadvertent" incident and Ms. Hudak didn't inquire about the repercussions of not attending.

5

None of the defendants' arguments establish a good faith defense. The defendants' claim that the only time Ms. Hudak was criticized for using FMLA leave was during the incident in question fails because it focuses entirely on all the times that the defendants didn't violate the FMLA instead of explaining how the October 25 incident for which they were found liable was made in good faith and on a reasonable basis.

Similarly, the defendants' argument that Ms. Hudak knew about FMLA protections doesn't establish a good faith defense. Ms. Hudak testified that the county's human resources director and Ms. Brandy both pressured her to work past her FMLA hours and threatened her with termination. Ms. Brandy didn't have a reasonable basis for believing she was acting lawfully since Ms. Hudak was made to think she could be fired despite the FMLA's protections. It isn't the law that employers can interfere with FMLA rights as long as their employees knew about their rights.

Next, the argument that the "isolated" and "inadvertent" nature of the unlawful action shows no intentional interference seems to ask the court to disregard the jury verdict, or at the very least focuses on all the times the defendants didn't violate the law, like the defendants' first argument. Finally, the argument that Ms. Hudak should have asked specifically about the

repercussions for not attending the evening training focuses on Ms. Hudak's knowledge after the incident in question and doesn't address Ms. Brandy's belief or justification for asking her to stay.

The defendants haven't shown that they acted in good faith and with a reasonable basis for believing they weren't violating the law. Accordingly, Ms. Hudak is GRANTED liquidated damages of $3,000 plus interest.

### C. Ms. Hudak's motion for front pay.

A successful plaintiff is entitled to "equitable relief as may be appropriate" under the FMLA. 29 U.S.C. § 2617(a)(1)(B). An employer may be liable for front pay as an equitable remedy if reinstatement of the plaintiff isn't feasible, since front pay is the functional equivalent of reinstatement. Clouiter v. GoJet Airlines, LLC, 996 F.3d 426, 449 (7th Cir. 2021). "In determining whether to award front pay, the court should consider all of the circumstances of the case." McNeil v. Econs. Lab., Inc., 800 F.2d 111, 118 (7th Cir. 1986). Front pay should give the plaintiff the present value of the earnings from the old job less the earnings from the new job. Cloutier v. GoJet, 996 F.3d at 449. Although front pay is often speculative, especially with longer proposed pay periods, front pay awards shouldn't be unduly speculative. McKnight v. Gen. Motors Corp., 973 F.2d 1366,

7

1372 (7th Cir. 1992). Courts must be mindful that front pay is more appropriate when the plaintiff has "no reasonable prospect of obtaining comparable employment." McNeil v. Econs. Lab., 800 F.2d at 118 (citing Whittlesey v. Union Carbide Corp., 742 F.2d 724, 729 (2d Cir. 1984)).

Neither party argues that reinstatement would be feasible. They dispute whether Ms. Hudak is entitled to front pay and if so, how much.

Ms. Hudak moves for front pay in the amount of $20,000, which she says is roughly the difference between what she made with Board of Elections and what she makes in her current job, projected out to five years. The defendants argue that Ms. Hudak should receive no front pay, but that if she's entitled to some front pay, she is only entitled to a much smaller amount.

According to Ms. Hudak, five years' front pay is reasonable given various signs that she'd likely have remained in her job, had it not been for any FMLA interference: she'd worked for past employers for long periods, indicating she's a stable employee; the salary and benefits were relatively good for someone with a high school education; the position was a permanent position; and nothing about her age or health suggested she'd need to retire at an early age. At the evidentiary hearing, Ms. Hudak testified that she intended to work until age 67.

8

The defendants dispute that five years' front pay is reasonable. They primarily argue that it would be inequitable to grant any front pay given that Ms. Hudak so quickly moved on from her job with the Board of Elections to be a bus driver. If Ms. Hudak sought and secured future employment before resigning, defendants argue, then she wouldn't have actually stayed at the job very long and front pay would be unfair.

Although Ms. Hudak secured new employment very quickly, the defendants haven't shown that she was seeking a new job before the FMLA interference occurred. The defendants might have a strong case had she sought a new job before the interference with her FMLA rights, but there is nothing improper with an employee getting her ducks in a row between the employer's FMLA violation and the employee's resignation. That is especially true for someone like Ms. Hudak, who views having health insurance as crucial. Without evidence that Ms. Hudak sought a new job before the FMLA interference, it would be too far a leap to conclude that she shouldn't be granted any front pay.

The court must then decide what duration of front pay is equitable, considering all the circumstances. Ms. Hudak presents several reasons for believing she'd stay at the Board of Elections for a long time, but some considerations cut against her claim. About half of Ms. Hudak's former

9

coworkers on the six-member election board have left since 2018. This casts doubt on whether Ms. Hudak's position was in practice a long-term position. A court must also consider whether a plaintiff has any reasonable prospect of obtaining comparable employment. McNeil v. Econs. Lab., Inc., 800 F.2d 111, 118 (7th Cir. 1986). Ms. Hudak's current job evidently provides lower earnings, but she hasn't argued or shown that anything limits her from obtaining employment more comparable to her old job.

In light of all circumstances, Ms. Hudak is entitled to one year of front pay, i.e., the difference in earnings for 2019. This reflects the court's certainty that Ms. Hudak desired to stay in the position while also considering turnover in the department. Awarding more than one year of front pay wouldn't be appropriate since Ms. Hudak hasn't argued or shown that she has no reasonable prospect of comparable employment, even if she makes less money in her new job.

Converting "one year of front pay" into a fixed quantity of dollars is an unusually slippery task on this record. An award of front pay is meant to give the plaintiff the present value of the earnings from the old job less any earnings from a new job. Clouiter v. GoJet Airlines, LLC, 996 F.3d 426, 449 (7th Cir. 2021); McNeil v. Econs. Lab., Inc., 800 F.2d 111, 1986 (7th Cir. 1986). The

10

parties offer competing evidence Ms. Hudak's earnings from her old job and from her new job.

Ms. Hudak claims she's entitled to $4,000 per year based on tax documents and a job description. She cites her 2018 IRS Form 1040 to show that she earned $29,645 in 2018. She then cites her 2019 and 2020 IRS Form 1040s to say she made $23,141 and $25,220 respectively. She projects she'd make $26,000 or so in 2021 based a direct deposit for one pay period. She argues that she deserves $4,000 per year because that's roughly the difference between her 2018 earnings and her yearly earnings after 2018. Ms. Hudak also provided a Board of Elections job description from 2018 that advertised a salary of $30,227 and testified that the salary is even higher now.

The defendants dispute Ms. Hudak's claimed earnings. First, they say her 2018 claimed earnings don't fairly reflect her earnings from the Board of Elections because her tax form includes income from all three jobs she held in 2018, not just her Board of Elections job. They claim she really made $27,011.27 from St. Joseph County in 2018. This income would include her probation and election job and is publicly available—Indiana law requires the Board of Accounts to disclose all public employees' annual compensation by government unit. See Ind. Code § 5-11-13-1. They argue Ms. Hudak's old earnings should be

11

considered $27,011.27 per year even if that includes income from her probation job. The defendants dispute her 2019 and 2020 earnings as well, citing the same public disclosures. They claim she made $24,778.96 in 2019 (instead of $23,141), and $27,008.37 in 2020 (instead of $25,220). They argue that since her old earnings were just over $27,000 and she made $27,008.37 in 2020, her front pay should be limited to the difference in pay in 2019, which is $2,232.31.

Neither side's proof is persuasive; both sets of evidence have issues concerning sources of income and duration. The defendants correctly point out that Ms. Hudak's claimed earnings for 2018 would include income from her bus driver job, and it wouldn't be fair to include that amount with her Board of Elections income. Yet the defendants don't explain why their alternative—Ms. Hudak's 2018 earnings from the county—is a better estimate. They neither explain why the sum should include earnings from her probation job, nor explain how to account for the income she would have earned in November and December had she not resigned. It might be fair to project what they propose to account for November and December, but this would still be unreliable since there's no basis for determining whether her rate of pay was the same in both county jobs.

12

Given the unexplained gaps in Ms. Hudak's tax records and the defendants' public disclosures, the job description Ms. Hudak produced at the evidentiary hearing is the most reliable evidence of her earnings with the Board of Elections. The job description advertises an income of $30,227. This amount covers the entire year, doesn't include income from Ms. Hudak's other jobs, yet is still in the ballpark of what each party proposes. Using this amount also avoids undue speculation as to how the salary has changed or might have changed between 2018 and now. Ms. Hudak's front pay is to be determined based on past earnings of $30,227 per year.

To calculate Ms. Hudak's front pay, the court must determine what she earned in her new job. The parties' evidence of Ms. Hudak's new job earnings don't have the same problems with source and duration as the evidence for 2018 earnings did. The question remains whether either party's evidence ensures a fairer outcome. Ms. Hudak's her IRS Form 1040, which purports to show wages, salary, and tips totaling $23,141 in 2019. The defendants present the Board of Accounts' report, which purports to show that Ms. Hudak received compensation of $24,778.96 in 2019. The defendants do not explain whether this compensation is limited to wages, salary, and tips or if it also includes non-wage benefits like health insurance benefits.

13

With this limited evidence, the fairest approach is to use Ms. Hudak's evidence for earnings from her new job because it seems to make for a more reliable comparator. The job posting used to determine her 2018 earnings describes salary and doesn't mention other benefits, yet Ms. Hudak testified about her health benefits. This suggests that the figure for her old earnings should be compared to a figure that represents salary, but not the monetary value of additional benefits. Ms. Hudak's IRS Form 1040 described "wages, salary, and tips" and the defendants' evidence described "compensation." Ms. Hudak's evidence tracks closely with the job posting's language, while the defendants' figure for "compensation" is vaguer as to whether it includes salary alone or salary plus the monetary value of other benefits. Between the two figures, Ms. Hudak's "wages, salaries, tips, etc." is a more reliable apples-to-apples comparison to "salary" than is the less specific "compensation," so her $23,141 figure is appropriate for calculating front pay.

Ms. Hudak is entitled to the difference between her old earnings, as described in the job posting, and the wages, salaries, and tips she made in 2019 according to her IRS Form 1040, which comes out to $7,086 in front pay.

14

## II. CONCLUSION

For reasons discussed in this opinion and order, the defendants' Rule 50 motion for judgment as a matter of law is DENIED. Ms. Hudak's motion for liquidated damages is GRANTED and she is awarded liquidated damages in the amount of $3,000 plus interest. Ms. Hudak's motion for front pay is GRANTED and she is awarded front pay in the amount of $7,086.

SO ORDERED.

ENTERED:   November 4, 2021

>        /s/ Robert L. Miller, Jr.
> Judge, United States District Court