UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JENNIFER HUDAK, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Cause No. 3:18-CV-932 RLM |
| ) | |
| ST. JOSEPH COUNTY BOARD ) | |
| OF COMMISSIONERS, *et al.* ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

Jennifer Hudak's petition for attorney's fees is before the court. [Doc. No. 78]. Ms. Hudak sued the St. Joseph County Board of Commissioners and Arielle Brandy, alleging that they violated the Family and Medical Leave Act. A jury returned a verdict in Ms. Hudak's favor and awarded her $3,000 in back pay. [Doc. No. 60]. After the trial, Ms. Hudak moved for liquidated damages and front pay, and following an evidentiary hearing, the court granted Ms. Hudak liquidated damages in the amount of $3,000 plus interest and front pay in the amount of $7,089. [Doc. No. 75]. Ms. Hudak now seeks an award of attorney's fees under 29 U.S.C. § 2617(a)(3). For reasons explained in this opinion, the court GRANTS Ms. Hudak attorney's fees in the amount of $90,112.

I. LEGAL STANDARD

The FMLA allows a prevailing plaintiff to recover reasonable attorney's fees. 29 U.S.C. § 2617(a)(3). A party prevails by succeeding on any significant issue in

litigation that achieves some of the benefit sought by litigation. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

To determine reasonable attorney's fees, a court typically starts by calculating the "lodestar amount," which is the reasonable hourly rates charged by the attorneys multiplied by the number of hours reasonably expended on the case. Id.; Paz v. Portfolio Recovery Assocs., LLC, 924 F.3d 949, 954 (7th Cir. 2019). A reasonable hourly rate is usually the rate an attorney actually charges for comparable work and should reflect rates charged by other lawyers in the community of reasonably comparable skill, experience, and reputation. Connolly v. Nat'l Sch. Bus Serv., 177 F.3d 593, 596 (7th Cir. 1999). The plaintiff should provide some evidence of market rates in addition to the attorney's affidavits about their own rates. Id. The defendant must present evidence showing why a lower rate is necessary, or else the defendant effectively concedes that the attorney's billable rate is reasonable. People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1313 (7th Cir. 1996). Once the lodestar amount is calculated, the court can adjust the total amount based on other factors, such as the result obtained in litigation. Rice v. Sunrise Express, Inc., 237 F. Supp. 2d 962, 972 (N.D. Ind. 2002) (citing Hensley v. Eckerhart, 461 U.S. at 434). Courts don't apply mechanical rules to reduce the lodestar but consider whether the fees are reasonable based on the difficulty, stakes, and outcome of the case. Connolly v. Nat'l School Bus Serv, 177 F.3d at 597. A court can consider other factors as well, and the factors used to adjust fees are often "subsumed" into the lodestar calculation. Hensley v. Eckerhart, 461 U.S. at 434 n.9.

II.    THE PARTIES' ARGUMENTS

Ms. Hudak moves for attorney's fees totaling $128,935. This amount is based on the work done by attorneys Daniel Pfeifer, Jeffrey McQuary, and James Barth, as well as work by Mr. Pfeifer's paralegal. Ms. Hudak claims Mr. Pfeifer performed 63.9 hours of work on Ms. Hudak's case at a rate of $550 per hour and Mr. Pfeifer's paralegal performed 10.8 hours of work at $75 per hour. She seeks fees for Mr. McQuary for 160.4 hours of work, representing time that wasn't exclusively spent on Ms. Hudak's unsuccessful First Amendment retaliation claim, at a rate of $450 per hour. Lastly, she claims Mr. Barth performed 59.9 hours on her case at $350 per hour. Ms. Hudak submitted an affidavit or declaration from each of the attorneys to support the reasonableness of their hourly rates and activity logs documenting the time each attorney spent on Ms. Hudak's case. Mr. Pfeifer's declaration attested to the rate and hours of his paralegal. Ms. Hudak submitted an affidavit from attorney Richard A. Waples, who didn't represent her in this case, attesting that the fees and hours are reasonable for a case like Ms. Hudak's and explicitly attesting that Mr. McQuary's rate of $450 per hour is reasonable for the local legal market. She asserts that these rates and hours spent are a reasonable lodestar amount.

The defendants argue that an award of $128,125 is excessive and unreasonable in light of its proportion to the jury award, the difficulty of the case, and the necessity of the hours and number of attorneys who worked on Ms. Hudak's case.

First, the defendants argue the amount sought is excessive compared to the jury award. Ms. Hudak sought an award of $13,000 for backpay and the jury returned a verdict of $3,000. The defendants concede that this award isn't de minimus, so attorney's fees shouldn't therefore be denied altogether, <u>Tuff Racing Prods., Inc. v. Am. Suzuki Motor Corp.</u>, 223 F.3d 585, 592 (7th Cir. 2000), but argue that the award is nevertheless disproportionate. The defendants also point out that Ms. Hudak also brought a First Amendment retaliation claim that she lost at summary judgment, and much of the fees requested probably were accrued for that unsuccessful claim.

The defendants then argue that the case was less difficult than $128,125 in attorney's fees suggests. The defendants characterize her case as "no more complex than a simple personal injury case" and point out that the trial only required a handful of witnesses.

Next, the defendants argue that as a general matter the amount sought isn't fair or reasonable. They point out that Mr. McQuary has tried twenty cases to a jury and Mr. Pfeifer has tried over 300 cases, so either could have tried the case without the other. Relatedly, the defendants argue Ms. Hudak doesn't justify why she needed both Mr. McQuarry and Mr. Pfiefer at trial as well as a third attorney, Mr. Barth. They claim that Mr. McQuary and Mr. Barth "[were] present during the trial but did not participate, yet [have] billed for their presence."

The defendants conclude by proposing that an award of $28,000 or less is reasonable. They reason that depositions only took twelve or so hours, written

4

discovery was minimal, and a single experienced trial attorney could have handled the case with no more than 80 billable hours. The defendants propose a billable hour of $350, which multiplied by 80 billable hours produces a sum of $28,000.

### III. DISCUSSION

The court starts with the lodestar amount. The affidavits and declarations attached to Ms. Hudak's petition support the conclusion that her attorneys' billable rates are reasonable. The defendants contest those rates and propose an hourly rate of $350 but the simplicity of Ms. Hudak's case is their only reason they suggest for reducing the hourly rates. They offer no evidence to rebut Ms. Hudak's evidence and show that the hourly rates must be lower based on the attorneys' experience or the local legal market. A defendant must come forth with evidence of why the plaintiff's asserted hourly rates should be lowered, so the court accepts Ms. Hudak's proposed hourly rates as reasonable. Connolly v. Nat'l Sch. Bus Serv., 177 F.3d 593, 596 (7th Cir. 1999).

As for the number of hours spent on litigation, the defendants are correct that Ms. Hudak's attorneys must have spent a substantial portion of their time on her First Amendment claim and that her award should be reduced to reflect time spent on that unsuccessful claim. Ms. Hudak's motion says that "most of the attorneys' work performed on pre-trial matters applied equally to the two claims" and notes that three hours were spent solely on the First Amendment claim, so her motion doesn't seek fees for that work. The attorneys' activity logs

don't differentiate between work on one claim or the other. Ms. Hudak suggests that she should receive fees for that work because it was intertwined with her FMLA claim and that unsuccessful procedural motions don't detract from whether a plaintiff ultimately prevails. Cabrales v. Cnty of Los Angeles, 935 F.2d 1050 (9th Cir. 1991). Ms. Hudak is right that unsuccessful motions might lead to the success of a claim, but the Cabrales court was referring to steps in litigation that led to the ultimate success of a claim. Ms. Hudak doesn't explain how her unsuccessful First Amendment claim led to success on the FMLA claim. Her failed First Amendment claim doesn't cut off all attorney's fees, but it shows that her total should be reduced.

The attorneys' activity logs and Ms. Hudak's motion don't clarify how much time was spent on the First Amendment claim. Because neither party presents a basis to assume that either claim was more complicated or time-consuming than the other, the fairest assumption is that the attorneys spent roughly equal time on both claims before summary judgment. It would be illogical, though, to assume that the hours should be crudely reduced by 50 percent. Some amount of work would have been just as necessary whether Ms. Hudak brought a single claim or several. For instance, one of Mr. McQuary's activity log entries is for drafting the issue statement, standard of review, and argument for a response to the defendants' motion for summary judgment. The court could cut this time in half, but doing so wouldn't reflect that Mr. McQuary would have needed to draft a standard of review section for a summary judgment filing regardless of how many claims were at issue. Because Ms. Hudak only prevailed on one of her

two claims, but her attorneys' work wouldn't have necessarily been reduced by an entire 50 percent had she only brought one claim, the court finds it appropriate to reduce the hours billed for all legal work up to and through the summary judgment stage by 40 percent.

Based on this conclusion, the court calculates the reduction by multiplying the number of hours claimed through summary judgment, multiplying by 40 percent, and multiplying that number by the attorneys' hourly rates. That total amount is then deducted from Ms. Hudak's proposed lodestar amount.

Mr. Pfeifer performed 20.9 hours of work through summary judgment, which when multiplied by 40 percent produces a reduction of 8.36 hours. Those hours reduced multiplied by his hourly rate of $550 produces a reduction of $4,598.

Mr. Pfeifer doesn't explain when his paralegal spent time on the case. The court assumes Mr. Pfeifer's paralegal's hours roughly track the timing of his hours, and about one third of Mr. Pfeifer's hours were spent before summary judgment (20.9 of 63.9 hours). The court assumes his paralegal spent about a third of those hours through summary judgment, as well. His paralegal's 10.8 hours of work divided by three produces 3.6 hours spent through summary judgment. That amount multiplied by 40 percent produces 1.44 hours. That amount multiplied by the paralegal's hourly rate of $75 produces a reduction of $108.

7

Mr. McQuary performed 76.8 hours of work through summary judgment, which when multiplied by 40 percent produce a reduction of 30.72 hours. Those hours multiplied by his hourly rate of $450 produces a reduction of $13,824.

Mr. Barth evidently worked little on the case until shortly before trial and only logged 3.2 hours before summary judgment. His total hours when multiplied by 40 percent produce a reduction of 1.28 hours. Those hours multiplied by his hourly rate of $350 produces a reduction of $448.

In total, these add up to a reduction of $18,978 and reflect the work done on Ms. Hudak's unsuccessful First Amendment case. That amount subtracted from the lodestar of $128,935 produces an amount totaling $109,957.

The defendants have several objections beyond the lodestar amount. They suggest the award should be reduced because the jury returned a verdict that was only a fraction of the damages that Ms. Hudak requested. The defendants concede, though, that the award wasn't de minimus and they cite no authority that attorney's fees should be reduced if the jury awards less than the plaintiff's request. On the contrary, courts should not "look to the percentage of the plaintiff's initial demand actually recovered . . . and then mechanically reduce the attorney's fee award by a proportionate amount." Connolly v. Nat'l Sch. Bus. Serv., 177 F.3d 593, 597 (7th Cir. 1999). Disproportionality isn't reason to reduce an award, so the court overrules this objection.

The defendants next argue that three attorneys were more than what was necessary, especially given the relative straightforwardness of the case. They point out that trial only involves six witnesses (four called by Ms. Hudak and two

8

called by the defendants) and that all three attorneys' efforts were duplicative and unnecessary, especially given the skill and experience that Mr. Pfeifer and Mr. McQuary tout in justifying their billable rates. The defendants propose that the entire case could be taken care of in 80 hours at a rate of $350 per hour.

The court can't conclude that the case should've merely taken 80 hours at $350 per hour because the defendants don't justify that assertion with much, if any, evidence. But the defendants' arguments regarding the duplicative efforts of three attorneys has some merit. All three attorneys seek reimbursement for their work done between summary judgment and trial. They don't respond to the defendants' argument that Mr. Pfeifer appeared to do the heavy lifting at trial or that staffing three attorneys was unnecessary given Mr. Pfeifer and Mr. McQuary's experience. The defendants are also right in describing the case as relatively straightforward—the trial involves one claim, lasted two days, and involved six witnesses. In light of these seemingly duplicative efforts and the relative straightforwardness of the case, the court will reduce the fee award in the amount of all time billed by Mr. Barth. Mr. Pfeifer and Mr. McQuary had already spent considerable time on the case before summary judgment and both claim great experience, so they haven't justified adding a third attorney to the case. Their own affidavits suggest that they were more than qualified to Ms. Hudak's case. This doesn't suggest that Mr. Barth wasn't helpful and doesn't impugn his ability—it reflects only that the fee petition and reply don't explain why all three attorneys' efforts were necessary given Mr. Pfeifer and Mr. McQuary's experience and the relatively short and straightforward trial.

Accordingly, the court reduces the fee award by $19,845, which represents the 56.7 hours billed by Mr. Barth after summary judgment multiplied by his billable hourly rate of $350. When applied against the reduced lodestar of $109,957, the fee award becomes $90,112.

Finally, the defendants add that the requested legal fees are far more than what a plaintiff would be willing to pay absent any fee-shifting statute. The purpose of fee-shifting statutes like the FMLA's is to encourage attorneys to represent clients who might not otherwise bring a case, thereby promoting enforcement of the laws. Wisconsin v. Hotline Indus., Inc., 236 F.3d 363, 366 (7th Cir. 2000). The court overrules this objection.

### IV.   CONCLUSION

For these reasons, the court GRANTS Ms. Hudak's petition for attorney's fees pursuant to 29 U.S.C. § 2617(a)(3) and assesses $90,112 in legal fees against the defendants.

SO ORDERED.

ENTERED:   May 4, 2022

/s/ Robert L. Miller, Jr.
Judge, United States District Court